UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| HARCO NATIONAL INSURANCE COMPANY | § § § § | |
| v. | § § | CIVIL ACTION NO. M-05-353 |
| CASTANEDA'S INSURANCE AND BONDING CO, *et al*. | § § § § | |

**ORDER GRANTING DEFENDANT MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL, DENYING DEFENDANT'S MOTION FOR SANCTIONS & DENYING DEFENDANT LEAVE TO FILE THIRD PARTY COMPLAINT**

**I. BACKGROUND**

Plaintiff Harco National Insurance Company ("Plaintiff") is a casualty insurance company engaged in the business of serving as surety on bail and immigration bonds. (Doc. 1 at 1). Plaintiff brings suit against Defendants Castenada's Insurance and Bonding Co. and Octavio Castenada ("Defendant") for wrongful possession and use of certain Power of Attorneys. *Id.* at 3.[1] Defendant denies Plaintiff's allegations and now moves to disqualify Plaintiff's counsel Mr. Douglas M. Becker ("Mr. Becker"). (Doc. 35).

Defendant argues that Mr. Becker represented Defendant Castaneda's Insurance and Bonding Company in a prior litigation that was substantially similar to this instant action. (Doc. 35 at 1). Defendant also argues that Mr. Becker discussed this very case with Defendant in which Mr. Becker received confidential information. (Doc. 35 at 1). In addition to

---

[1] According to Plaintiff, Capital Bonding Corporation ("CBC") was authorized by Plaintiff to appoint and supervise sub-agents in designated areas of the United States, subject to Plaintiff's prior approval. CBC also appointed and supervised various sub-agents on behalf of surety companies other than Plaintiff. Defendant Octavio Castaneda, at time prior to January 1, 2003 is alleged to have had a sub-agency relationship with CBC. Plaintiff alleges that the Department of Homeland Security is demanding payment from Harco on numerous INS bonds which were produced by Castaneda and for which the detainee did not appear and the bond was forfeited. (Doc. 1 at 3).

disqualification, Defendant seeks sanctions as well as leave to file a third-party complaint against Mr. Becker. (Docs. 36, 47). Mr. Becker acknowledges that he had previously represented Defendant but denies that the instant matter is substantially similar. As for Defendant's claim that he discussed confidential information about this case, Mr. Becker recalls no conversation where the instant case was discussed. (Doc. 39 at 22). The Court having held an evidentiary hearing on the matter, is now ready to rule on these motions.

## II. ANALYSIS & CONCLUSION

### A. Standard of Review

Motions to disqualify attorneys are substantive motions determined by standards developed under federal law. *Cramer v. Sabine Transp. Co.*, 141 F. Supp. 2d 727 (S.D. 2001). The party seeking to disqualify an attorney must thereafter bear the burden of proving that disqualification is warranted. *Id.* citing *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1028 (5th Cir. Unit B June 1, 1981). In determining whether disqualification of an attorney is appropriate, the court should consider the following ethical canons: (1) the ABA Model Rules of Professional Conduct; (2) the Texas Disciplinary Rules of Professional Conduct; and (3) the local rules of the Southern District of Texas. *See Federal Deposit Insurance Corporation v. United States Fire Insurance Company*, 50 F.3d 1304, 1312 (5th Cir. 1995); *In re American Airlines*, 972 F.2d 605, 610 (5th Cir. 1992).[2] The applicable rules and standards are viewed in

---

2   Tex. R. Prof. Conduct 1.09 (2005) states:

>   (a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:
>   (1) in which such other person questions the validity of the lawyer's services or work product for the former client;
>   (2) if the representation in reasonable probability will involve a violation of Rule 1.05; or
>   (3) if it is the same or a substantially related matter.

The Local Rules of the Southern District of Texas have adopted the Texas Disciplinary Rules of Professional Conduct as the minimum standard of practice. *See LOCAL RULES OF THE UNITED STATES DISTRICT COURT FOR THE SOURTHERN DISTRICT OF TEXAS, App. A, Rule 1.*   (As the ABA adopted the Model Rules in 1983 as a replacement for the Model Code, the Model Code arguably no longer represents the ethical rules of the national profession. *Cramer*, 141 F.Supp.2d at 730 citing *F.D.I.C.*, 50 F.3d at 1309 n.4.)  ABA Rule 1.9 is identical to Texas Rule 1.09 in all important respects. *See American Airlines*, 972 F.2d at 615 n.2.

light of both the litigant's right to counsel of his own choosing and the public interest, considering also the appearance of impropriety in general, the possibility that a specific impropriety will occur, and whether the likelihood of public suspicion from any appearance of impropriety outweighs any social interest served by the lawyer's continued representation in the case. *Douglass v. Valteau*, 2005 U.S. Dist. LEXIS 119993, * 4 (E.D. La 2005) citing *Horaist v. Doctor's Hospital of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001).

**B.  Mr. Becker Subject to Disqualification**

Mr. Castaneda claims to have had a brief, minute and a half conversation with Mr. Becker. Mr. Castaneda testified before the Court as to the following:

CASTANEDA:     The second meeting we had before the Court.  I was supposed to testify for the case, Mr. Becker was representing us.  We were outside the courtoom.  I asked Mr. Becker if I could talk to him for a  second?  He said sure.  First of all I'm glad you're here because apparently they thought I was going to be there to testify.

CASTENADA:     I explained to him a little situation I had with this company named Harco and Capital Bonding where I had issued some money to them and they had  sent me some worthless immigration bonds.  And I specifically told him--and he asked, "why they were worthless" and I said "because I can't get licensed thru them with the state yet, even though I have a license; all I have to do is ok the separate license so I can do the immigration bonds." And specifically, I mentioned immigration bonds only.  I never mentioned anything about bail bonds.

MR. THORPE:     Okay, and did you ask him his advise?

CASTENADA:     Yes, I asked if I could talk to him at his office and see if he would be interested in taking the case so I could get my money back..  We didn't discuss the amount of money.  We didn't discuss anything else.  He said I was welcome to go to his office.

MR. THORPE:   Did you discuss information that you deemed to be confidential.

CASTENADA:   That is all the information I discussed with him.

MR. THORPE:   Do you deem that information to be confidential

CASTENADA:   To me I do, yes.[3]

The Court holds that this short, offhand conversation did not amount to the formation of a separate attorney-client relationship regarding the subject of the discussion. *See Banc One Capital Partners Corp. v. Kniepper*, 67 F.3d 1187, 1198 (5th Cir. 1995)(Although the attorney-client relationship can be implied, courts will not readily impute the contractual relationship absent a sufficient showing of intent.); *American Mortg. Sec. Funding Corp. v. Fiirst Louisiana Federal Sav. Bank*, 1988 U.S. Dist. LEXIS 9576, *9 (E.D. La. 1988)(A consultation about possible representation did not, by itself, establish the existence of an attorney-client relationship); *B.F. Goodrich Co. v. Formosa Plastics Corp*., 638 F. Supp. 1050, 1052 (S.D. Tex. 1986)(finding no implied attorney-client relationship where it was clear during an initial interview that the purported client was reserving the right to make a decision as to whether to retain the lawyer).[4] Nevertheless, the fact that the attorney-client relationship had not yet been established does not mean that Plaintiff's counsel owed no duty whatsoever to Defendant. *See*

---

[3] February 8, 2006 hearing, Mr. Castaneda, 11:17am. Mr. Becker does not recall this conversation. (Doc. 39 at 22).

[4] The conversation was a very short, offhand exchange that occurred while another legal matter was pending. In that conversation Mr. Becker did not agree to represent Defendant, nor did he make any promise to do so in the future. Mr. Becker did not offer any legal advice, nor did he advice Mr. Castaneda to take any particular action. *See Brown v. Slenker*, 220 F.3d 411, 422 (5th Cir. 2000)(An attorney-client relationship is formed when the advice and assistance of an attorney is sought and received). No consultation fee was charged. Mr. Becker is allegedly to have only stated that Defendant was welcome to come by his office and talk more about the case. *In re Gerry*, 173 S.W.3d 901, *6 (Tex.App.-- Tyler, 2005, no pet)(No attorney-client relationship where attorney met with client for 42 minutes, discussed case, and left impression with client that she should come back if she wanted the firm to represent her.).

*B.F. Goodrich Co. v. Formosa Plastics Corp.*, 638 F.Supp. 1050, 1052 (S.D. Tex. 1986).[5] Rather, a fiduciary relationship between an attorney and his client extends even to preliminary consultations between the client and the attorney regarding the attorney's possible retention. *Nolan v. Foreman*, 665 F.2d 738, 739 (5th Cir. 1982) citing *Braun v. Valley Ear, Nose, and Throat Specialists*, 611 S.W.2d 470 (Tex.Civ.App.-Corpus Christi 1980, no writ.). Mr. Castaneda discussed the case with Mr. Becker, albeit briefly, with an expectation of possible retention. Confidential information was disclosed. Accordingly, the rules of professional conduct prohibit Mr. Becker from representing Plaintiff Harco Insurance in the instant matter. *See* Tex. Disciplinary R. Prof'l Conduct 1.09(a)(3); *In re Gerry*, 173 S.W.3d 901 at *7; Op. ABA Comm. on Ethics and Prof'l Responsibility No 90-358, n. 14 (1990)(Protection of Information Imparted by Prospective Client).[6]

Mr. Becker argues that even if this information was "confidential," Defendant's subsequent disclosure results in waiver. *See* Tex. R. Prof. Conduct 1.05(a)(3)(No violation if confidential information has become generally known). Given the particular circumstances in this case, the Court disagrees. It is true that Mr. Castaneda's motion for leave to file a counterclaim discloses this same confidential information more or less. (Doc. 46). However, Mr. Becker was retained by Plaintiff Harco Insurance well before Mr. Castaneda's counterclaim disclosure. Though Mr.

---

[5] Without prior consent, a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client: . . . (3) if it is the same . . . matter." *In re Gerry*, 173 S.W.3d 901, * 4 (Tex.App.-- Tyler, 2005, no pet.) citing Tex. Disciplinary R. Prof'l Conduct 1.09(a)(a). The same matter aspect of this prohibition prevents a lawyer from switching sides and representing a party who interests are adverse to a person who disclosed confidences to the lawyer while seeking in good faith to retain the lawyer. *Id.* citing 1.09 cmt. 4A. (quotations omitted). "Confidential information" includes both "privileged information" and "unprivileged client information." *Id.* citing 1.05(a). "Privileged information" includes the information of a client protected by the attorney-client privilege of Texas Rules of Evidence 503. *Id.* "Unprivileged client information" means all information relating to a client or furnished by the client, other than privileged information, acquired by the attorney during the course of or by reason of the representation of the client. *Id.* The term "client" includes one consults an attorney with a view to obtaining professional legal services from that attorney. *Id.* citing TEX. R. EVID. 503(a).

[6] . . . "If the law firm has not acquired extensive or sensitive information about the potential representation from the would-be client, however, it may later undertake the representation of the would-be client's opponent in the same matter. *See, e.g., Silver Chrysler Plymouth v. Chrysler Motors, Corp.*, 518 F.2d 751 (C.A. 2 1975). On the other hand, if the firm without first obtaining a waiver of confidentiality has received extensive or sensitive information relating to the representation of the would-be client, it ordinarily may not undertake representation of the opponent in the same or a substantially related matter. *See, e.g., Bridge Products, Inc. v. Quantum Chemical Corp*., supra n. 10; *but cf.*, *INA Underwriters Insurance Co. v. Rubin and Hughes v. Paine, Webber, Jackson & Curtis, Inc.*, supra n. 10. In each situation a factual inquiry is required, and the burden of proving that it received no extensive or sensitive information relating to the representation of the would-be client should be on the law firm." Op. ABA Comm. on Ethics and Prof'l Responsibility No 90-358, n. 14 (1990)(Protection of Information Imparted by Prospective Client).

Becker did not do so, as he clearly had no memory of the brief conversation with Mr. Castaneda, he certainly could have used this information to the disadvantage of Mr. Castaneda. For example, such information would have provided Plaintiff Harco Insurance, *inter alia*, additional time for discovery, additional time for Harco to race Castaneda to the courthouse, the opportunity for Harco to select a venue, etc. Though Mr. Becker did not do so, there was indeed a possibility that such use of confidential informoation could have occurred.

The Court finds that the likelihood of public suspicion from any appearance of impropriety outweighs any social interest served by Mr. Becker's continued representation in the case. Mr. Becker and his firm are therefore **DISQUALIFIED** from further representation of Harco in this case. *See Tristem, Ltd. v. City of New Orleans*, 2003 U.S. Dist. LEXIS 21576, * 5 (E.D. La. 2003) citing *Brasseaux v. Girouard*, 214 So.2d 401, 406 (La. App. 3d Cir. 1968)(The courts err on the side of protecting the confidences and expectations of loyalty of the former client, as borderline cases are resolved in favor of disqualification). The Court however **DENIES** Defendant's request for sanctions and leave to file a third party complaint. (Docs. 36,47). There was no evidence presented that Plaintiff Harco retained Mr. Becker for an improper purpose, nor was there any evidence that confidential information was in fact disclosed to Plaintiff Harco Insurance. (Doc. 39 at 25).[7] After conducting a full evidentiary hearing, there was no evidence that supported a factual basis for the third party complaint or sanctions.

SO ORDERED this 27th day of February, 2006, at McAllen, Texas.

_____
Randy Crane
United States District Judge

---

7 Mr. Siedzikowski, attorney for Plaintiff Harco Insurance, avers that "[a]t the time [he] called Mr. Becker [he] had no information pertaining to his prior representation of Octavio Castaneda or any of Castaneda's business interests. Mr. Becker has not disclosed any information to me about Octavio Castaneda or his business operations other than the fact that Mr. Becker represented him in the Hidalgo County case." (Doc. 39 at 25).